IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In the Matter of:<br><br>CIVIL INVESTIGATIVE DEMAND TO DR. HOAU-YAN WANG, | Case No. 26-mc-62 (MMB) |

**DECLARATION OF THOMAS BAIRD IN OPPOSITION TO DR. HOAU-YAN WANG'S MOTION TO SET ASIDE CIVIL INVESTIGATIVE DEMAND PURSUANT TO 31 U.S.C. § 3733(j)(2)**

I, Thomas Baird, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am an Acting Deputy Director and a Scientist Investigator in the Office of Research Integrity ("ORI"), Office of the Assistant Secretary for Health, U.S. Department of Health and Human Services ("HHS"). I received a Doctor of Philosophy (Ph.D.) degree in biochemistry and molecular biology from Indiana University in 2014; a Master of Science (M.S.) degree in marine biology from College of Charleston in 2008; and a Bachelor of Arts (B.A.) degree, summa cum laude, in biology from Franklin College in 2004. From 2014 to 2018, I was a Postdoctoral Research Fellow at the National Institutes of Health - National Heart, Lung, and Blood Institute. From 2018 to 2020, I was an American Association for the Advancement of Science ("AAAS") Science & Technology Policy Fellow at the National Science Foundation ("NSF"). I began working at ORI in June of 2020. In May 2025, I was assigned to work on ORI's oversight review of The City University of New York's ("CUNY's" or the "University's") investigation into allegations of research misconduct against Dr. Wang under 42 C.F.R. Part 93.

2. I submit this declaration to provide information concerning ORI's role with regard to allegations of research misconduct at universities receiving Public Health Service ("PHS")

funds ("PHS"),[1] ORI's role with respect to CUNY's investigation into Dr. Wang, and communications between ORI and CUNY relating to CUNY's investigation of Dr. Wang, and to respond to an assertion contained in Dr. Hoau-Yan Wang's Motion to Set Aside Civil Investigative Demand Pursuant to 31 U.S.C. §3733(j)(2) (the "Motion") that "ORI had apparently agreed" with CUNY that "'Dr. Wang had not engaged in research misconduct as defined by CUNY policy' and had not engaged in 'intentional, knowing, or reckless falsification and/or fabrication.'" Motion at 6. As explained more fully below, Dr. Wang's assertion that ORI "had apparently agreed" with conclusions in a letter sent by CUNY to ORI on May 30, 2025, which is attached hereto as Exhibit 1, is inaccurate. As a general matter, ORI does not "agree" or "disagree" with institutional findings. Instead, ORI reviews institutional findings in its oversight capacity to determine whether an institution acted in accordance with applicable regulation. Following its oversight review, ORI may choose to make its own, separate findings. ORI's oversight of CUNY's investigation into allegations of research misconduct at CUNY has not been completed. Further, the Motion selectively quotes from the letter, omitting details necessary to understand CUNY's findings and its investigation as a whole. In fact, the findings by CUNY's committee investigating Dr. Wang raise significant concerns about Dr. Wang's conduct.

**ORI'S ROLE REGARDING ALLEGATIONS OF RESEARCH MISCONDUCT**

3. An institution receiving or applying for funding from the Public Health Service for certain biomedical or behavioral research projects is responsible for responding to allegations of

[1] PHS "means the unit within the Department of Health and Human Services that includes the Office of Public Health and Science and the following Operating Divisions: Agency for Healthcare Research and Quality, Agency for Toxic Substances and Disease Registry, Centers for Disease Control and Prevention, Food and Drug Administration, Health Resources and Services Administration, Indian Health Service, National Institutes of Health, and the Substance Abuse and Mental Health Services Administration, and the offices of the Regional Health Administrators." 42 C.F.R. § 93.220 (2005).

research misconduct against an individual. 42 C.F.R. §§ 93.102, 93.300.[2] "*Research misconduct* means fabrication, falsification, or plagiarism in proposing, performing, or reviewing research, or in reporting research results." *Id.* § 93.103. "Fabrication is making up data or results and recording or reporting them." *Id.* § 93.103(a). "Falsification is manipulating research materials, equipment, or processes, or changing or omitting data or results such that the research is not accurately represented in the research record." *Id.* § 93.103(b). "Research misconduct does not include honest error or differences of opinion." *Id.* § 93.103(d). After investigating allegations, an institution must make a finding as to whether the individual has committed research misconduct. *Id.* § 93.313(f). A research misconduct finding requires that: (1) "[t]here be a significant departure from accepted practices of the relevant research community," (2) "[t]he misconduct be committed intentionally, knowingly, or recklessly," and (3) "[t]he allegation be proven by a preponderance of the evidence." *Id.* § 93.104(a)-(c).

4. ORI is a component of HHS with authority to make research misconduct findings. 42 U.S.C. § 289b; 42 C.F.R. Part 93. While ORI can make findings, "ORI expects institutions to carry inquiries and investigations through to completion and to pursue diligently all significant issues." 42 C.F.R. § 93.316. After receiving an institution's investigation report, ORI conducts an oversight review of the institution's investigation to determine whether the institution complied with its regulatory responsibilities. 42 C.F.R. §§ 93.400(a)(6), 93.403. ORI may also conduct its own additional analyses, develop its own evidence, and make its own research misconduct findings. *Id.* §§ 93.400(a)(7), 93.400(c), 93.403(d)-(g), 93.404(a). After completing its review, ORI either: i) closes the case without a finding of research misconduct; ii) "[m]akes findings of

---

[2] In 2024, HHS revised 42 C.F.R. Part 93. 89 Fed. Reg. 76,280 (Sept. 17, 2024). The revised Part 93 applies to allegations received on or after January 1, 2026. *See* 42 C.F.R. § 93.75(b) (2024). The allegations in the CUNY research misconduct proceeding were received before that date, and thus, citations herein are to the 2005 version of 42 C.F.R. Part 93, which was in effect prior to the 2024 revision.

research misconduct and proposes and obtains HHS approval of administrative actions based on the record of the research misconduct proceedings and any other information obtained by ORI during its review"; or 3) recommends settlement to HHS. *Id.* § 93.404. If ORI makes research misconduct findings or seeks to impose or enforce HHS administrative actions (other than debarment or suspension), it notifies a respondent via a charge letter. *Id.* § 93.405. For an action involving a potential debarment or suspension – which means the Government wide exclusion (temporarily or for a set term) of a person from eligibility for Federal grants, contracts and cooperative agreements under HHS regulations – the HHS debarring official issues a notice of proposed debarment or suspension as part of the charge letter. *Id.* §§ 93.205, 93.405. If a respondent does not contest the charge letter within thirty days of receiving it, ORI's research misconduct findings become final and the HHS administrative actions become final and will be implemented, except that the debarring official's decision is the final HHS action for debarment or suspension. *Id.* § 93.406. The debarring official is an official authorized by the Department "to impose debarment or suspension." *Id.* § 93.206. The full set of actions that ORI may take are spelled out in greater detail in its governing regulations, set forth at 42 CFR Part 93.

5. A respondent can avail himself of administrative procedures to contest findings of research misconduct and proposed administrative actions. After receiving a charge letter, a respondent has an opportunity to contest them by requesting a hearing before an Administrative Law Judge ("ALJ") affiliated with the Department's Departmental Appeals Board. 42 C.F.R. §§ 93.500, 93.501. "The ALJ provides an independent *de novo* review of [ORI's] findings of research misconduct and the proposed [HHS] administrative actions." *Id.* § 93.517(b).

6. ORI's governing regulations make clear that ORI activities are not a substitute or a replacement for investigations conducted by the Department of Justice ("DOJ"). In fact, these

regulations expressly provide that: "If ORI believes that a criminal or civil fraud violation may have occurred, it shall promptly refer the matter to the Department of Justice (DOJ), the HHS Inspector General (OIG), or other appropriate investigative body. ORI may provide expertise and assistance to the DOJ, OIG, PHS offices, other Federal offices, and state or local offices involved in investigating or otherwise pursuing research misconduct allegations or related matters." 42 C.F.R. § 93.401(a).

**CUNY INVESTIGATION**

7. Below is a chronology of CUNY's communications with ORI concerning its investigation into whether Dr. Wang engaged in research misconduct. While the CUNY letter dated May 30, 2025 (the "University Final Letter") provided the University's final conclusions on its investigation of research misconduct by Dr. Wang and stated that the "University has determined that research misconduct did not occur," Exhibit 1 at 2, this statement must be understood in the context of the University Final Letter as a whole together with the findings of the University appointed committee investigating the allegations. Specifically, and as detailed below, the committee found "long-standing and egregious misconduct in data management and record keeping by Dr. Wang." *See* Exhibit 2 at 1; Exhibit 3 at 1. The committee also concluded "that Dr. Wang's inability or unwillingness to provide primary research materials to this investigation represents egregious misconduct." Exhibit 4. ORI is continuing to review and assess each of these submissions and evaluating the University Final Letter in the context of all of these submissions by CUNY.

8. ORI's role in this matter began on September 1, 2021, when the National Institutes of Health Office of Extramural Research – Research Integrity ("OER-RI") sent a referral to ORI regarding allegations of fabrication and/or falsification in Dr. Wang's work. Dr. Wang was an

Associate Medical Professor at the City College of New York. OER-RI requested ORI's review and oversight on the matter since it may involve fabrication and/or falsification in an application for PHS funding and several PHS-supported publications.

9. On September 13, 2021, ORI sent a letter to the City College of New York ("CCNY"), which is part of CUNY, asking the school to conduct an inquiry into possible research misconduct by Dr. Wang.

10. On October 8, 2021, ORI sent an email to CCNY notifying it of additional allegations against Dr. Wang to include in the inquiry or investigation.

11. On February 11, 2022, CCNY sent a Preliminary Inquiry Report to ORI reflecting its recommendation to initiate a research misconduct investigation.

12. CUNY tasked a research misconduct committee (the "Committee") comprised of research-active faculty at the University with examining 31 allegations of research misconduct made against Dr. Wang. CUNY asked the Committee to determine whether research misconduct did or did not occur. *See* Exhibit 2 at 1-3, Exhibit 3 at 1-3.

13. After the Committee had concluded its work, on June 1, 2023, CUNY submitted a response to ORI. But instead of submitting one Final Investigation Report, CUNY submitted two reports that both state at the top of the document, "Draft Investigation Report." While both had the word "Draft" in the title of the first page on the document, the computer files themselves were saved by CUNY under different names. One report was saved under a file name that included "DRAFT Investigation Report" (the "Draft Report") (Exhibit 2), and the other report was saved under a file name that included "Final Report Clean" (the "Final Report") (Exhibit 3). It is not clear why CUNY sent these two different reports at the same time. Eventually, on July 19, 2023, CUNY emailed a copy of the Final Report to ORI, this time with the word "DRAFT" on the top

of the first page replaced by the word "FINAL" to "avoid any further confusion with regards to this case."

14. The Draft Report included findings, by a preponderance of the evidence, of scientific misconduct by Dr. Wang. Specifically, the Draft Report states: "The committee has found that the preponderance of evidence supports the conclusion of knowing scientific misconduct by Dr. Wang for 14 of the 31 allegations." Exhibit 2 at 1. The Committee recommended "immediate editorial action be taken by the journals to retract the publications in which the data in question appeared, if they have not already done so." *Id.* The Draft Report also concluded that Dr. Wang engaged in "long-standing and egregious misconduct in data management and record keeping." *Id.* The Committee found that "no primary data and no research notebooks exist." *Id.* The Committee observed that, on account of these issues, "even in the instances in which we have not found that a preponderance of evidence supports the conclusion of research misconduct, the integrity of Dr. Wang's work remains highly questionable." *Id.*

15. The Final Report appeared to adopt a different standard of proof than the preponderance of the evidence standard applied in the Draft Report but also raised significant concerns about Dr. Wang's research. The Final Report states that the "committee has found evidence highly suggestive of deliberate scientific misconduct by Dr. Wang for 14 of the 31 allegations." Exhibit 3 at 1. The Final Report states that the Committee's investigation revealed "long-standing and egregious misconduct in data management and record keeping by Dr. Wang." *Id.* The Committee found that "the integrity of Dr. Wang's work remains highly questionable." *Id.* The Committee, however, did not include the finding of knowing scientific misconduct by a preponderance of the evidence that had been included in the Draft Report, observing instead that "Dr. Wang's failure to provide underlying raw data or research records has prevented the

committee from making definitive conclusions regarding misconduct." *Id.* at 46. The Committee also found that the "integrity of the data in majority of the allegations remains highly suspect." *Id.*

16. On June 22, 2023, ORI emailed CUNY asking about the discrepancy between the Draft Report's findings of scientific misconduct by Dr. Wang and the Final Report's contention that the Committee could not make definitive conclusions. ORI requested that CUNY provide a detailed explanation and any supporting documentation on why and how the Committee reached different conclusions during the finalization of the investigation report.

17. On June 26, 2023, CUNY sent a document containing an "addendum" to the "Final report" (attached as Exhibit 4) (the "Addendum"). The Addendum stated that, despite the Committee's frustration by Dr. Wang's "inability to provide a single datum or notebook in response to any allegation," the Committee decided that "it would be most conservative to conclude that" Dr. Wang's "failure to provide data or records prevented us from making an objective assessment in any case." *Id.* At the same time, the Committee concluded that "Dr. Wang's inability or unwillingness to provide primary research materials to this investigation represents egregious misconduct." *Id.* The Committee also found that "[t]his failure, the troubling research practices described in our report, and the clear indications of misconduct in his response to [a scientific journal's] editorial concerns, is highly suggestive of longstanding and deliberate scientific misconduct by Dr. Wang." *Id.*

18. On February 2, 2024, ORI sent a letter (attached hereto as Exhibit 5) to CUNY notifying it of deficiencies in its investigative report. ORI wrote that the agency "was expecting a detailed letter from your institution that would provide information that would meet the requirements specified in the PHS regulation (42 C.F.R. Part 93). Specifically, in accordance with 42 C.F.R. § 93.400(a), § 93.400(d), and § 93.403, ORI's oversight review determined that CUNY's

submitted investigation report and supporting documentation do not fully meet the institutional reporting requirements per § 93.315." *Id.*

19. On March 6, 2024, CUNY indicated that "the University had stayed the investigation, pending the engagement of an outside law firm to investigate the processes surrounding the Research Misconduct Investigation." *See* Exhibit 6. The letter also provided a response to questions raised by ORI in its February 2, 2024 letter. *See* Exhibit 5.

20. Between March 2024 and May 30, 2025, CUNY sent ORI periodic updates on its progress.

21. On May 30, 2025, CUNY sent ORI the University Final Letter to "provide an update and final conclusions on its investigation." *See* Exhibit 1 at 1. This letter is not a further report from the Committee. Rather, it is a letter from the University Executive Director of Research Integrity and Compliance. *Id.* at 1. On June 16, 2025, ORI sent an email to CUNY acknowledging receipt of the letter.

22. The University Final Letter recognized the Committee's finding in the Final Report "that the lack of preservation of research records represented a significant departure from accepted practices of the scientific community." The University Final Letter relayed that, based on the standard of proof it applied, the Committee "did not find that Dr. Wang's actions constituted acts of intentional, knowing, or reckless falsification and/or fabrication," and that on account of this, the Committee "concluded that Dr. Wang had not engaged in research misconduct as defined by CUNY policy." Exhibit 1 at 2. The University offered as explanation that "the Committee may have misunderstood the relevant evidentiary standard in reaching its determination" and "may have applied a heightened evidentiary standard that exceeds the preponderance of the evidence standard." The University nonetheless adopted the findings of the Committee and concluded that

for "each of the allegations of research misconduct, the University has determined that research misconduct did not occur based on the conclusions reached by the Committee in its Final Report, acknowledging that the Committee may have applied a heightened evidentiary standard." *Id.* at 2.

23. As noted above, ORI's review of CUNY's investigation is ongoing, and the case has not been closed. ORI is still in the process of reviewing the materials that CUNY submitted to ORI. ORI has not made a final determination of what, if any, further actions to take.

24. ORI has not endorsed or agreed to any findings made by the University in the University Final Letter, as Dr. Wang incorrectly stated in the Motion, and has not concluded that Dr. Wang did not engage in research misconduct. *See* Motion at 6 (claiming that "CUNY had decided, and ORI had apparently agreed, that 'Dr. Wang had not engaged in research misconduct as defined by CUNY policy' and had not engaged in 'intentional, knowing, or reckless falsification and/or fabrication.'"). Indeed, the Committee's Draft Report, Final Report, and Addendum each raise significant concerns about Dr. Wang's conduct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 21, 2026
Rockville, Maryland

[signature]

THOMAS BAIRD
Acting Deputy Director and
Scientist Investigator at ORI